LEWIS *v.* THE STATE.

756

No. 14659.   OCTOBER 7, 1943.   REHEARING DENIED NOVEMBER 12, 1943.

*Edward T. Hughes, Robert B. Short, Sam S. Bennet,* and *James A. Branch,* for plaintiff in error. *T. Grady Head, attorney-general, Maston O'Neal, solicitor-general, Frank S. Twitty,* and *Victor Davidson, assistant attorney-general,* contra.

DUCKWORTH, Justice. ■ The first special ground of the motion for new trial excepts to the allowance in evidence of the written statement by the accused, over the objection that it was irrelevant, immaterial, and prejudicial, and that it was not introduced as a confession and not for the purpose of impeachment. Where evidence is objected to in its entirety, and any portion of the same is not subject to the objection, it is not error to admit the entire evidence over such objection. *Gully* v. *State,* 116 *Ga.* 527 (2) (42 S. E. 790) ; *Sims* v. *Sims,* 131 *Ga.* 262 (7) (62 S. E. 192) ; *Bridges* v. *McFarland,* 143 *Ga.* 581 (3) (85 S. E. 856) ; *Freeman* v. *Young,* 147 *Ga.* 699 (3-b) (95 S. E. 236) ; *Waters* v. *Wells,* 155 *Ga.* 439 (3-b) (117 S. E. 322). It is also the law that where evidence is objected to, and subsequently during the trial testimony substantially to the same effect is admitted without objection, the previous ruling admitting the evidence over objection is not cause for a new trial. *Waters* v. *Wells,* supra; *O'Pry* v. *Noland Co.,* 180 *Ga.* 565 (2) (179 S. E. 630). The conduct·of the accused, before, at the time of, and immediately following the killing is relevant, and any evidence showing this conduct is admissible. *Reese* v. *State,* 7 *Ga.* 373 (3) ; *Turner* v. *State,* 138 *Ga.* 808, 811 (76 S. E. 349) ; *Shafer* v. *State,* 191 *Ga.* 722 (2) (13 S. E. 2d, 798). The statement of the accused here challenged is an account of his conduct immediately before, at the time of, and immediately following the alleged crime. The sheriff was permitted, without objection, to testify to substantially the entire contents of this document. On application of the above-stated principles of law, the court did not err in admitting the evidence over the objection urged.

■ Special grounds 2 and 3 except to rulings admitting in evi-

dence the finger-prints of the policeman Ivey, and the testimony of the State's witness to the effect that the finger-prints on the gun with which the deceased was alleged to have been killed were not those of Ivey. These grounds urge many objections to the evidence which were not urged upon the trial. Such objections can not be considered by this court. *Georgia Railroad &c. Co.* v. *Daniel,* 135 *Ga.* 108 (2), 110 (68 S. E. 1024). The evidence was admissible, over the objection urged upon the trial, that it was irrelevant, immaterial, and prejudicial, to contradict a previous statement made by the accused to the sheriff, and was circumstantial evidence indicating his guilt.

■ Grounds 4, 5, 6, 8, 9, and 10 except to the refusal of timely written requests to charge. "A request to charge should in itself be correct, and even perfect; otherwise the refusal to give it will not be cause for a new trial. *Etheridge* v. *Hobbs,* 77 *Ga.* 531 (3 S. E. 251)." *Macon, Dublin & Savannah Railroad Co.* v. *Joyner,* 129 *Ga.* 683 (5), 688 (59 S. E. 902). The written requests must be legal, apt, and precisely adjusted to some principle involved in the case. *Sikes* v. *Seckinger,* 173 *Ga.* 673 (160 S. E. 911) ; *Barrett* v. *Barrett,* 177 *Ga.* 190 (5), 196 (170 S. E. 70).

Ground 4 complains of the refusal to charge: "I charge you further, where the facts and circumstances in evidence and all reasonable deductions therefrom present two theories, one of guilt and the other consistent with innocence, the law compels you to accept the theory consistent with innocence. Guilt of a criminal offense must be proved beyond a reasonable doubt, and the jury can not convict upon mere conjecture and bare suspicion." The second sentence of this request, on application of the above principles of law, should not have been charged as requested. The words "the jury can not convict upon mere conjecture and bare suspicion" were not adjusted to the evidence in the case. So to charge would have unjustifiably reflected upon the State's evidence, and the request was more favorable to the accused than the evidence authorized.

The requested charge in ground 5 was: "I charge you further, that the killing of the deceased by the accused must be shown to have been the act of the accused, and the burden is upon the State of Georgia to show this fact beyond a reasonable doubt." The substance of this requested charge was clearly and fairly covered in the

general charge. The request is confusing, and in fact comes dangerously close to constituting an assumption against the accused that he did the killing.. The language, "the killing of the deceased by the accused," might have caused the jury to believe that the court assumed that the defendant did the killing. It is the duty of the judge to refuse to give any charge that is unfair or that is susceptible of a construction that is unfair to the accused. The request is not clear, and the court did not err in refusing it.

The request to charge as set out in ground 6, having stated that to constitute murder the killing must be done with malice, and that when the evidence adduced to establish the guilt shows neither justification nor alleviation, malice may be inferred, then states that the evidence adduced "to establish the killing of the deceased by the accused must establish the fact of the killing of the deceased by the accused beyond a reasonable doubt"; and "unless the homicide is proved to be the act of the accused, malice could not be inferred, and the burden would still be on the State to show that the killing was done with malice." The quoted portion of the request should not have been given in charge. That portion of it to the effect that the evidence must show that the accused did the killing beyond a reasonable doubt was clearly and fairly covered in the general charge, and the portion that "unless the homicide is proved to be the act of the accused, malice could not be inferred," is inapt and without meaning in so far as the issues in the case on trial are concerned. The definition of murder as given in the general charge, and as set forth in the first portion of this request, shows that there must be a killing before the question of malice arises. It would have constituted no enlightenment to the jury for the court to charge, as here requested, that unless the homicide is shown to be the act of the accused, malice could not be inferred, and the burden would still be on the State to show that the killing was done with malice. Indeed, unless the homicide is proved to have been the act of the accused, it would be impossible to show that the accused did the killing with malice. There is no merit in this exception.

The requested charge urged in ground 8 was that the burden is upon the State to prove the corpus delicti, and to show that the defendant was the perpetrator of the alleged offense. Obviously the term "corpus delicti" is not one which a jury of laymen might

be expected to understand without its being defined. The court's charge instructed the jury that in order to convict on circumstantial evidence alone, the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused, that it must be consistent with his guilt, and inconsistent with his innocence; and that all essential facts and circumstances necessary to show the commission of the crime and to connect the defendant therewith or as a party to it must be clearly shown, before the jury would be authorized to convict. The requested charge could not be given without adding thereto a definition of the term "corpus delicti." The substance of the request was fully covered by the general charge. This exception is without merit.

Ground 9 urges a requested definition of the term "preponderance of evidence," and an instruction that insanity could be proved by circumstances. Although the judge charged on general insanity, and that the burden was upon the accused to prove insanity by a preponderance of the evidence, there is no evidence in this record that would authorize a finding of insanity. The charge on insanity gave the accused a defense to which he was not entitled under the evidence. Therefore, whether or not in a proper case the request should be complied with, under this record the accused was not entitled to an instruction that insanity may be proved by circumstances or to an instruction defining the term "preponderance of evidence."

The requested charge urged in ground 10 is in substance that a suspicion alone, however strong and well founded, has no probative value, and that if the facts and circumstances in the case raise only a suspicion of guilt the jury should acquit the defendant. This request is not based upon the evidence, and constitutes an unwarranted reflection upon the evidence offered by the State. The rule for testing the evidence was clearly and fairly set forth in the general charge to the effect that the circumstances must exclude every reasonable hypothesis save that of the guilt of the accused, in order to convict.

Grounds 7 and 20 involve the contention that the judge should have charged, as requested in writing: "if you believe beyond a reasonable doubt that the deceased was killed by the accused, but at the time, you believe, from all the facts and circum-

stances in this case that the defendant did such killing in his sleep and while unconscious of his act, you would be authorized to acquit the defendant. This would be what is known under the law as the act of a somnambulist. I further charge you that somnambulism is a species of mental unsoundness connected with sleep, and that such state of mental unsoundness may operate as a defense where it negatives conscious guilt." Our law requires that there be a joint operation of act and intent in order to constitute crime, and that to constitute murder there must be a killing with malice aforethought. It may be that an unconscious person or a somnambulist could not commit murder, under the laws of this State. This does not mean that one may wilfully, by his own act, produce such a condition and escape responsibility for crime. Confining our ruling to the facts in this record, if the accused, as a result of his admittedly voluntary act of drinking the major portion of a pint of whisky, rendered himself unconscious or in a condition where he could not control his acts, and while in that condition he shot and killed the deceased, he would not be entitled to an acquittal on this ground. In 1 Wharton's Criminal Law, 125, § 84, under the title "Other forms of unconsciousness may be a defense," it is recognized that sleep-walking or somnambulism may constitute a defense to a criminal charge; but it is there pointed out that if the abnormal state was artificially induced in order to facilitate the commission of the crime, then the offense is malicious, and that if it was negligently induced the defendant is chargeable with criminal negligence. In *Choice* v. *State*, 31 *Ga.* 424 (7), it was ruled: "If the condition of a man's mind, when unexcited by liquor, is capable of distinguishing between right and wrong, reasoning and acting rationally, and he voluntarily deprives himself of reason by intoxication, and commits an offense while in that condition, he is criminally responsible for it."

We do not hold that where one, although weak and negligent, has over a period of time yielded to a thirst for whisky or drugs and has thereby become an addict to such a habit which has deprived him of his reason, he would be held accountable for his acts. Our ruling is confined to the facts in this record, where it appears that at all other times the accused was of sound mind, knew the difference between right and wrong, and was in no wise a helpless victim of the habit of drinking, but that by his own statement he on the

night of the killing drank considerable whisky; and the evidence shows that on the next morning vomit was found on two of his garments. Under these circumstances, whether he drank excessively for the purpose of facilitating his act of slaying the deceased or whether he did it carelessly, he is accountable. He would not be entitled to a verdict of acquittal, as sought in the requested charge. Tested by the foregoing ruling, the requested charge was not precisely adjusted to the issues in the case, and was not a complete statement of the law, in that it authorized the jury to acquit the accused if they found that he did the slaying while in an unconscious state known as sleep-walking or somnambulism, without regard to whether or not his condition had been artificially produced by his own wilful or negligent act. In view of the importance and novelty of this question, we prefer to rest our ruling upon two grounds, the first just stated, and the second that the evidence did not authorize a submission of this defense. It is strongly argued by counsel, that since the State introduced the written admission of the accused, and since that admission tended to show that he committed the crime but contained the further assertion that he was asleep at the time of the slaying, and since no other person was shown to have been present, the location of the weapon with which the deceased was slain, together with the testimony that death was instantaneous, excludes any idea of suicide, and that it must follow that the accused did the slaying and that he did it while asleep. The reasoning is persuasive, and tested by cold logic is difficult to refute; but it does not take account of the actual evidence. The accused nowhere admits that he did the killing. He denies that he had any knowledge of the killing. He plants his lack of knowledge and his innocence upon his assertion that he was asleep. It is argued by counsel that the jury might have found that the accused was asleep, and, if authorized under the charge to do so, found that he did the slaying while in that condition. If the jury had found that the accused was asleep, then under the charge it was their duty to acquit him on the ground that he did not do the slaying. In order to convict him they had to find, under the charge, that he was not, as his statement asserted, asleep at the time of the killing. We recognize the rule of law that authorizes all reasonable deductions from proved facts; but we think that to find, under the evidence in this case, an insane mental condition

of the defendant, known as sleep-walking or somnambulism would be to leave the realm of reasonable deduction and move out into a field of speculation and conjecture without the support of any concrete fact. Counsel cite Fain v. Commonwealth, 78 Ky. 183, 39 Am. R. 213, which is the only case in this country that we have been able to find involving this identical defense; but there the reversal was based upon the ruling of the trial court denying the effort of the accused to prove a long habit of somnambulism, and to prove by medical experts the condition of one when thus afflicted. That case is clearly not in point here. This record shows not one word of evidence that the accused at any time suffered this affliction. The court did not err in refusing to charge as requested, because, first, the request was not a sound statement of the law; and second, the evidence did not authorize the charge. These grounds are without merit.

■ Grounds 11, 12, and 13 except to portions of the charge which are in the exact language of the respective Code sections, 38-105, 38-110, and 38-109. Ground 11 complains because the charge as given was not followed by the words "of defendant's guilt." Ground 12 complains because the charge as given contains a definition of direct evidence; and ground 13 complains because the charge is not followed by the words "of the crime charged." That grounds 11 and 13 are entirely without merit is too obvious to require discussion. Aycock v. State, 188 Ga. 550 (2) (4 S. E. 2d, 221). The criticism in ground 12 is without merit. It does not appear that the accused could possibly have suffered injury because the court defined direct evidence. It is very clear that by defining direct evidence the court was thereby enabled to define more clearly indirect or circumstantial evidence. The charge as given is not subject to the criticism made. Wilburn v. State, 141 Ga. 510 (6) (81 S. E. 444); Bostick v. State, 34 Ga. App. 595 (130 S. E. 221); Moss v. State, 43 Ga. App. 109 (2), 112 (158 S. E. 461).

■ Ground 14 complains of an excerpt of the charge as follows: "It must be consistent with his guilt and inconsistent with his innocence." This ground is not complete. It contains nothing to show what the word "It," with which the excerpt begins, referred to; but assuming that it referred to the evidence, it clearly was not hurtful to the accused, since, in addition to instructing the jury

766

that the evidence must be consistent with his guilt, the court further stated that it must be inconsistent with his innocence. Elsewhere in the charge the circumstantial-evidence rule was clearly given. There is no merit in this criticism.

■ Grounds 15 and 16 complain of charges, that, in order to convict, the essential facts and circumstances necessary to show the commission of the crime and connect the defendant therewith must be clearly proved and established, and to convict on circumstantial evidence alone the proved facts must not only be consistent with the hypothesis of guilt but must exclude every other reasonable hypothesis save that of the defendant's guilt. It is contended that the charges complained of substituted the words "clearly proved and established" for the words "beyond a reasonable doubt." The charge is not subject to the criticism. It fairly and clearly instructed the jury what they must find in order to convict; and it is not required that the court repeat this instruction in connection with every portion of the charge. *Smith* v. *State,* 124 *Ga.* 213 (52 S. E. 329) ; *Lanier* v. *State,* 187 *Ga.* 534 (6) (1 S. E. 2d, 405).

■ Ground 17 complains of the charge defining an admission as applied to a criminal case, the complaint being that the charge assumed that an admission had been made of a fact or facts connecting the defendant with the slaying of the deceased, and that there was no evidence whatever of such an admission on the part of the defendant; and that it was an incorrect definition of the term "admission" as applied to criminal cases. It is insisted that where the charge stated that an admission is "a statement or statements," it should have substituted for these words "the avowal or acknowledgment," and that the failure to make this substitution led the jury to the conclusion that any statement, whether it was an acknowledgment or not, that tended to connect the defendant with a criminal transaction was an admission. There was an abundance of statements in the alleged admission tending to connect the accused with the crime charged. The definition of admission as given in the charge is correct, and it was not subject to the criticism.

■ Ground 18 complains of the charge that voluntary drunkenness is no excuse for crime, on the ground that there was no evidence to warrant the charge, and that it was a direct intimation of an opinion of the court. This criticism is not well founded. The

accused was shown to have admitted that during the night and before the killing took place he had consumed almost a pint of whisky; and the evidence showed that two articles of wearing apparel belonging to the accused had vomit on them the next morning. This evidence was sufficient to authorize the charge. *Dickens* v. *State,* 137 *Ga.* 523 (5) (73 S. E. 826); *Cone* v. *State,* 193 *Ga.* 420 (18 S. E. 2d, 850).

. ■ Ground 19 excepts to that portion of the charge defining malice, and states that giving to the jury the charge complained of might have been proper had there been no dispute that the defendant did the killing, but, since that was directly denied, that the language of the charge amounted to an assumption by the court that the defendant did the killing. It is further contended that the evidence showed no motive for the killing. Nothing in the charge intimates an assumption that the accused did the killing, but it is a statement of law without such intimation. See *Overman* v. *State,* 187 *Ga.* 396, 398 (2) (1 S. E. 2d, 20); *Wilson* v. *State,* 190 *Ga.* 824 (6), 830 (10 S. E. 2d, 861). It is not required, except for the purpose of proving malice, that the State prove motive. *Lynn* v. *State,* 140 *Ga.* 387 (79 S. E. 29). This ground of complaint is without merit.

■ The evidence authorized the verdict.

*Judgment affirmed. All the Justices concur.*